UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACKIE F., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 3:19-CV-1441-B |
| § | | |
| ANDREW SAUL, Commissioner of the § | | |
| Social Security Administration, § | | |
| § | | |
| Defendant. § | | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jackie F. seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision to deny her disability insurance benefits. For the reasons set forth below, the Court **REVERSES** the decision and **REMANDS** this case for further administrative proceedings.

### I.

### BACKGROUND

Plaintiff, a former forklift operator and tow-truck driver, applied for disability insurance benefits with the Social Security Administration (SSA) in March 2, 2017. Doc. 11-1, Administrative R. ( hereinafter "A.R."), 348–53. In his application, Plaintiff explained that he was unable to work since August 11, 2016, due to various conditions: specifically, nerve damage to his neck and shoulders; high blood pressure; arthritis in his knees ankles, shoulders, and neck; high arches ("broken feet multiple times"); hereditary bone deficiency; chronic lower back pain; depression; migraines; and dyslexia. *Id.* at 368. After his application for disability insurance benefits was denied

- 1 -

initially and on reconsideration, *id.* at 213–33, Plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* at 244–45. This hearing took place on May 14, 2018. *Id.* at 177.

Following the hearing, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act (SSA), from August 11, 2016 through August 30, 2018—the date the ALJ issued his decision. *Id.* at 143–44. The ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the spine and degenerative joint disease of the bilateral shoulders. *Id.* at 134. With respect to Plaintiff's depressive disorder and anxiety, however, the ALJ found that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitations in the four functional areas," *i.e.*, understanding, remembering, and applying information; interacting with others; concentrating; and adapting and managing oneself. *Id.* at 135. Thus, the ALJ concluded that Plaintiff did not have a severe mental impairment or combination of mental impairments. *Id.*

Thereafter, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 136. The ALJ placed specific emphasis on Listing 1.02 ("Major dysfunction of a joint(s)"), and Listing 1.04 ("Disorders of the spine"). *Id.* The ALJ found that Plaintiff did not meet Listing 1.02 because the record failed to establish that Plaintiff's joint dysfunction resulted in his "inability to ambulate effectively, or inability to perform fine and gross movements effectively." *Id.* Additionally, the ALJ concluded that Plaintiff did not meet Listing 1.04 as the record failed to show that Plaintiff's "back impairment resulted in a compromise of a nerve root or the spinal cord," along with evidence of other associated symptoms or conditions as defined by the Listing. *Id.*

The ALJ then turned to the determination of Plaintiff's residual functional capacity (RFC). *Id.* While the ALJ found support in the record that Plaintiff was treated for degenerative disc disease and degenerative joint disease, the ALJ nonetheless concluded that Plaintiff is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; walk or stand six hours of an eight-hour workday; and sit for six hours of an eight-hour workday. *Id.* at 140–41. The ALJ found that Plaintiff's statements related to the intensity, persistence, and limiting effects of his impairments were "not entirely consistent" with the evidence in the record. *Id.* at 141. Specifically, the ALJ pointed out that Plaintiff's MRIs did not reveal significant central canal stenosis; Plaintiff's muscle strength was "5/5" in his upper and lower extremities and his gait was steady; and there was no evidence to support Plaintiff's claims of severe mental impairment. *Id.* The ALJ further noted that while Plaintiff's treating providers indicated that he could not perform his previous work as a forklift operator, Plaintiff was capable of being trained to work a new position. *Id.* Finally, the ALJ noted that Plaintiff was discouraged from pursuing surgical options. *Id.*

Accordingly, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b). *Id.* at 136. However, crediting testimony from the vocational expert, the ALJ acknowledged that Plaintiff's RFC precluded him from performing his past work. *Id.* at 142. So the ALJ next considered Plaintiff's "age, education, work experience, and residual functional capacity," and determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* (citing 29 C.F.R. §§ 404.1569–.1569a). Thus, the ALJ concluded that a finding of "not disabled" was warranted. *Id.* at 143.

Plaintiff requested a review of the ALJ's decision with the Appeals Counsel, which denied the request. *Id.* at 1–8. The ALJ's decision was thus the final decision of the Commissioner in

Plaintiff's case. *Id.* at 1.

Thereafter, Plaintiff filed this action in federal district court. *See generally* Doc. 1, Compl. The case was automatically referred to Magistrate Judge Ramirez, who ordered the parties to brief the alleged errors raised by Plaintiff. Doc. 12, Order Directing Filing of Brs., 2. Subsequently, this Court withdrew the reference of the proceeding to Magistrate Judge Ramirez. Doc. 23, Order Withdrawing Reference, 1. As the Court has received all briefing on Plaintiff's claims, they are now ripe for review.

In his brief, Plaintiff raises the following issues: (1) whether substantial evidence supported the ALJ's RFC determination; and (2) whether the ALJ's error harmed Plaintiff. Doc. 20, Pl.'s Br., 1. With respect to the first issue, Plaintiff argues that the ALJ improperly rejected treating source opinions related to Plaintiff's functioning. *Id.* Plaintiff asserts that to reject treating source opinions, without reliable medical evidence to the contrary, the ALJ was required to apply the factors in 20 C.F.R. § 404.1527. *Id.* But because the ALJ failed to do so, he erred. *Id.* Plaintiff further contends that the ALJ independently assessed Plaintiff's RFC without medical opinions to support his determination. *Id.* at 28–29.

As for second issue, Plaintiff argues that he was in fact harmed by the ALJ's error because the ALJ's decision related to Plaintiff's vocational potential was not supported by substantial evidence, but instead based on defective hypotheticals. *Id.* at 30–31. Further, Plaintiff claims that he can show prejudice in the result of the ALJ's decision based on the vocational expert's answers to questions accounting for his treating physician's opinions. *Id.* at 31.

As explained below, the Court concludes that the errors Plaintiff raises warrant remand of this case to the SSA.

## II.

## LEGAL STANDARD

Judicial review in social security cases is limited to two determinations: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Copeland*, 771 F.3d at 923. The Commissioner—not the Court—resolves any conflicts in the evidence. *Martin v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citation omitted). Accordingly, the Court must not substitute its own judgment for that of the Commissioner's, and the Court "may affirm only on the grounds that the Commissioner stated for his decision." *Copeland*, 771 F.3d at 923 (citation omitted).

"[T]o qualify for disability insurance benefits . . . , a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" § 423(d)(1)(A).

The ALJ performs a "five-step sequential analysis" when evaluating a disability claim. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). These five steps include determinations of:

> [W]hether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from

>doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Id.* at 447–48. "In its transition from steps three to four, the ALJ determines the claimant's [RFC] . . . ." *Beene v. McMahon*, 226 F. App'x 348, 349 (5th Cir. 2007) (per curiam). The RFC is "a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545).

## III.

## ANALYSIS

The crux of this appeal is whether substantial evidence supported the ALJ's RFC determination. First, Plaintiff asserts that the ALJ improperly rejected opinions from her treating physician, Dr. Hughes, without applying the factors in 20 C.F.R. § 404.1527(c)(2). Next, Plaintiff argues that the ALJ "played doctor" in making his RFC determination, as the state-agency physicians, whose opinions the ALJ heavily relied on, did not base their assessments on Plaintiff's entire medical record. *Id.* at 28. Plaintiff contends that in formulating their opinions, these physicians did not account for the effects of a 2017 motor-vehicle accident or additional lumber spine on Plaintiff's ability to work. *Id.* at 28–29; Doc. 22, Pl.'s Reply, 6–7. Plaintiff reasons that because the state-physician opinions did not account for these additional impairments and circumstances, the ALJ's RFC finding was not based on a medical opinion, but rather the ALJ's own lay intuition about the effect of Plaintiff's impairments. Doc. 20, Pl.'s Br., 28–32.

In response, the Commissioner argues that the ALJ's RFC finding was supported by substantial evidence. Doc. 21, Def.'s Br., 5. The Commissioner asserts that Plaintiff's argument is

essentially "that the ALJ's RFC finding should have mirrored a medical opinion, specifically, one of Dr. Hughes' medical opinions." *Id.* But, the Commissioner contends, the RFC determination is the ALJ's sole responsibility, and not a medical opinion. *Id.* (citations omitted). And "the ALJ is 'not required to accept any medical evidence *in toto*, rather, [the ALJ's] RFC determination is based on the evidence as a whole.'" *Id.* at 6 (quoting *Gray v. Astrue*, 2011 WL 856941, at *6 (N.D. Tex. Mar. 3, 2011)). The Commissioner points out that the ALJ considered each of Dr. Hughes's medical opinion, and the ALJ was within his discretion to give each of these opinions little weight. *Id.* While the Commissioner neglects to address Plaintiff's argument that the ALJ failed to apply the § 404.1527(c)(2) factors in rejecting Dr. Hughes's opinions, the Commissioner does argue that the ALJ provided good cause for giving these opinions little weight. *Id.* at 6–8. The Commissioner further asserts that the ALJ's decision was supported by substantial evidence because of the weight placed on the non-examining state-agency physician opinions. *Id.* at 12.

In reply, Plaintiff relies on two Fifth Circuit cases that hold that an RFC determination must be derived from a medical opinion to be supported by substantial evidence. Doc. 22, Pl.'s Reply, 6–8 (citing *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) and *Williams v. Astrue*, 335 F. App'x 828 (5th Cir. 2009) (unpublished)). And, Plaintiff asserts, because the only medical opinions that accounted for the additional circumstances of Plaintiff's impairments were those of Dr. Hughes, which the ALJ rejected, the ALJ's RFC determination was not based on medical opinion evidence.

As explained below, the Court holds that the ALJ erred as to both of Plaintiff's arguments, and these errors require remand to the SSA.

A. *The ALJ's RFC Determination Was Not Supported by Substantial Evidence.*

The Court first addresses Plaintiff's argument that the ALJ improperly rejected Dr. Hughes's

medical opinions, and then reaches the argument that the ALJ "played doctor" in his RFC determination.

Three medical opinions of Dr. Hughes are at issue. A.R. 141. The ALJ considered and gave little weigh to each. *Id.* The first opinion is an attending physician statement Dr. Hughes completed for Plaintiff's insurance company. A.R. 749. This form was completed on October 20, 2017. *Id.* In the form, Dr. Hughes opined that Plaintiff had no ability to work due to severe functional limitations, specifically limitations in the range of motion in his neck and shoulders. *Id.* at 750. The ALJ decided to give this opinion little weight "because it was vague, inconsistent with treatment notes, and the determination of disability is an issue reserved to the Commissioner under SSR 96-5p." *Id.* at 141.

The second opinion is a treating physician's migraine headache form, dated June 14, 2017. *Id.* at 757–58. In this form, Dr. Hughes noted that Plaintiff experienced migraine headaches, localized behind his eyes and in the back of his head. *Id.* These migraines occurred more than once per week and could last all day. *Id.* Dr. Hughes opined that these migraines interfered with Plaintiff's ability to work and would cause Plaintiff to miss more than one day of work per week. *Id.* In placing little weight on this opinion, the ALJ noted, without elaboration, that "the medical evidence fails to support this conclusion." *Id.* at 141.

Finally, Dr. Hughes's third opinion is a medical source statement completed on May 9, 2018. *Id.* at 897–900. Here, Dr. Hughes indicated that Plaintiff suffers from chronic cervical radiculopathy with chronic pain and opiate dependence, as well as chronic severe major depressive disorder and anxiety. *Id.* at 897. According to Dr. Hughes, this chronic radicular pain made it "difficult [for Plaintiff] to lift with his upper body, affecting grip strength, emanating from his cervical disk disease and affecting his upper arms, shoulders, [and] lower neck." *Id.* Because of these conditions and

symptoms, Dr. Hughes opined that Plaintiff was not physically capable of performing work requiring him to be on his feet longer than two hours in an eight-hour day. *Id.* Further, Dr. Hughes opined that he did not believe that Plaintiff could lift ten pounds frequently and twenty pounds occasionally on a consistent basis in a work situation. *Id.* at 898. *Id.* Dr. Hughes commented that Plaintiff would need to rest frequently because of neck stiffness and pain, requiring breaks every two hours in an eight-hour workday. *Id.* at 897–98. Dr. Hughes estimated that Plaintiff would be "off task" for more than 25% of an eight-hour workday, and would likely miss more than ten days of work per month, on average. *Id.* at 899. Dr. Hughes also opined that Plaintiff would not be able to have sustained use of his arms and hands over the course of an eight-hour workday with respect to certain tasks, including reaching overhead, reaching forward, handling, or fingering. *Id.* at 898. Dr. Hughes represented that he based his conclusion on his "education, experience, training, [Plaintiff's] medical history as obtained by [Dr. Hughes] from [his] medical records, [his] examinations, treatment and findings with respect to [Plaintiff]." *Id.* at 897. The ALJ gave this opinion little weight because he found that Dr. Hughes "checked the form without reference to objective findings or narrative treatment notes to explain such severe restrictions." *Id.* at 141.

While the ALJ found reasons to give each of these treating physician opinions little weight, he gave the opinions of both of the state-agency medical consultants "considerable weight." *Id.* at 141. These state-agency medical consultants did not conduct a direct physical examination of Plaintiff, but instead merely reviewed his paper medical documents through June of 2017. Doc. 20, Pl.'s Br., 15. The first state-agency physician, Dr. Michael Douglas, conducted his review on April 27, 2017. A.R. at 217–19. Dr. Douglas determined that Plaintiff had a severe spinal impairment that limited Plaintiff in the following ways: occasionally lifting and/or carrying twenty pounds; frequently

lifting and/or carrying ten pounds; standing and/or walking for a total of about six hours in an eight-hour workday; and pushing and/or pulling for an unlimited time. *Id.* at 217–18. Dr. Douglas further opined that Plaintiff could occasionally climb stairs, and frequently balance, stoop, kneel, crouch, and crawl. *Id.* Dr. Douglas also determined that Plaintiff was not limited in handling, fingering, or feeling, but that he was limited in reaching overhead to his right because of his shoulder surgery. *Id.* at 219. The second state-agency medical consultant, Dr. Jim Takach, essentially concurred with all of Dr. Douglas's findings and opinions. *Id.* at 229–32.

The Court first concludes that it was error for the ALJ to give little weight to Dr. Hughes's opinions without explicitly considering the factors in 20 C.F.R. § 404.1527(c)(2). Generally, "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995)). However, "treating physician's opinions are far from conclusive because 'the ALJ has the sole responsibility for determining the claimant's disability status.'" *Luella Betty G. v. Saul*, 2019 WL 3936750, at *3 (N.D. Tex. Aug. 20, 2019) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). "In the ALJ's determination, if he or she finds good cause, 'less weight, little weight, or even no weight may be given to the physician's testimony.'" *Id.* (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). Good cause may be found "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

However, "absent reliable medical evidence *from a treating or examining physician* controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating

physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[1] *Id.* at 453 (emphasis added). These factors are:

> (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and the extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of the record; (5) the consistency of the opinion with the record as a whole; (6) and the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2). All of these factors must be considered. *Id.* § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). As *Newton* implies, however, "where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician." *Maria L. v. Berryhill*, 2019 WL 1294450, at *7 (N.D. Tex. Mar. 21, 2019) (citing *Qualls v. Astrue*, 339 F. App'x 461, 466–67 (5th Cir. 2009)).

Here, the ALJ identified no "reliable medical evidence from a treating or examining physicians" that contradicted Dr. Hughes's opinions such that the ALJ could forego the § 404.1527(c)(2) analysis. *See Newton*, 209 F.3d at 456. While the state-agency medical consultants provided controverting opinions, these physicians never examined nor treated Plaintiff; they merely reviewed his medical records. Further, while the ALJ provided reasons for giving Dr. Hughes's opinions little weight, he did not address the § 404.1527(c)(2) factors. *See* A.R. 136–41; *see also Maria L. v. Berryhill*, 2019 WL 1294450, at *7 (N.D. Tex. Mar. 21 2019) ("[T]he Fifth Circuit's prior case law suggests that an ALJ cannot forego an otherwise required analysis of the factors simply by

---

[1] This treating-physician regulation currently appears at 20 C.F.R. § 404.1527(c)(2).

invoking a good cause exception.") (citation omitted). The Commissioner does not address the ALJ's failure to do so. And though the ALJ's ultimate conclusion to give greater weight to the opinions of the state-agency physicians than to those of Dr. Hughes may be supported by the § 404.1527(c)(2) factors, "a court cannot review the decision without its rationale or explanation." *Schmedeke v. Saul*, 2020 WL 30000785, at *6 (S.D. Tex. June 4, 2020); *see also Jones v. Colvin*, 2017 WL 3908980, at *6 (S.D. Miss. Sept. 6, 2017) ("Because the ALJ gave greater weight to the opinion of a non-examining medical consultant than to Jones's treating physician, without addressing the [relevant C.F.R. factors] as mandated by *Newton*, remand for consideration of those factors is required.").

Next, the Court considers whether the ALJ relied on his own lay opinion of Plaintiff's limitations in making his RFC determination. Plaintiff contends that the ALJ did not rely on a medical opinion that accounted for the effects of a motor-vehicle accident and additional lumbar impairment on Plaintiff's limitations. Doc. 22, Pl.'s Reply, 1–2. Plaintiff argues this is the case because the ALJ relied exclusively on the opinions of the state-agency medical consultants, who did not account for either the motor-vehicle accident or the additional lumbar impairments evidenced in Plaintiff's medical record postdating these opinions. *Id.* Thus, Plaintiff's asserts, this undermines the ALJ's RFC determination. *Id.* at 8. The Commissioner responds that the RFC determination is not required to track or mirror a medical opinion, as this assessment is placed in the sole hands of the ALJ. Doc. 21, Def.'s Br., 15. The Commissioner asserts that "the ALJ properly interpret[ed] the medical evidence to determine [Plaintiff's] capacity for work." *Id.*

The Court again agrees with Plaintiff. The Commissioner is correct that the "RFC determination falls solely on the ALJ, including whether to accept or reject medical opinions on a claimant's ability to perform work-related activities." *Ramirez v. Saul*, 2020 WL 1853749, at *3 (S.D.

Tex. Apr. 12, 2020) (citing *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012)). However, in *Ripley*, the Fifth Circuit held that "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557). Thus, it is error for the ALJ to "independently decide the effects of Plaintiff's impairments on her ability to perform work-related activities." *Raper v. Colvin*, 262 F. Supp. 3d 415, 423 (N.D. Tex. 2017) (cleaned up) (quoting *Thornhill v. Colvin*, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015)).

The Commissioner concedes here that the state-agency medical consultants did not consider the effects of Plaintiff's motor-vehicle accident on his ability to perform work. Doc. 21, Def.'s Br., 11. Rather, the Commissioner argues that the "medical evidence does not indicate that the July motor vehicle accident resulted in injuries that would have impacted the State agency physicians' assessments." *Id.* However, as Plaintiff points out, the only physician that assessed whether the motor-vehicle accident exacerbated Plaintiff's existing impairments, as they affected his ability to work, was Dr. Hughes. Doc. 20, Pl.'s Br., 28; *see* A.R. 697, 700 (assessing Plaintiff post-accident).

Additionally, the state-agency physician opinions did not account for a large portion of Plaintiff's medical history post-accident. For example, in June 2018, a pain-management specialist, Dr. Arredondo, ordered a lumbar spine MRI of Plaintiff. Doc. 22, Pl.'s Reply, 1 (citing A.R. 1127). According to Plaintiff, this MRI revealed "severe disc degeneration" and Grade I spondylolisthesis at L5-S1. *Id.* And Dr. Arredondo's physical exam of Plaintiff revealed decreased range of motion in his shoulders and cervical spine. A.R. 1037–38. Dr. Arredondo diagnosed Plaintiff with radiculopathy of the cervical region, spondylosis of the cervical region, rotator cuff dysfunction, and

cervical disc disorder. A.R. 140.

While the ALJ did review this medical information, *id.*, there was no medical opinion relied on by the ALJ to allow him to make a determination "as to the effects of the Plaintiff's [physical] impairments on his ability to work," other than the non-examining state physicians who did not account for much of Plaintiff's medical history. *See Fitzpatrick v. Colvin*, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016); *see also Rivera-Servera v. Berryhill*, 2018 WL 1701954, at *5 (N.D. Tex. Mar. 9, 2018) ("[T]he reports of non-examining physicians do not provide substantial evidence when such reports 'constitute the sole medical evidence presented' or 'when a non-examining physician makes specific medical conclusions that either contradict or are unsupported by findings made by an examining physician.'" (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990))). If the ALJ was insistent on rejecting the only medical opinion that considered Plaintiff's complete medical history and its effects on his ability to work, the ALJ should have instead obtained an additional expert medical opinion about the types of work Plaintiff could perform. *Thornhill*, 2015 WL 232844, at *10 (citing *Ripley*, 67 F.3d at 557).

In sum, because the ALJ did not consider the criteria in § 404.1527(c)(2) in giving little weight to Dr. Hughes's opinions and because the ALJ's RFC determination was not supported by medical opinion, the Court concludes that the RFC determination is not supported by substantial evidence.

B.  *The ALJ's Errors Warrant Remand to the SSA.*

Having concluded that the ALJ erred, the Court must decide whether the errors warrant remand. The Court finds that it does. First, had the ALJ conducted the proper analysis under § 404.1527(c)(2), he might have determined that Dr. Hughes's opinions were entitled to greater

weight, which could have led to a different result. *See Maria L.*, 2019 WL 1294450, at *7 (holding that prejudice was established where ALJ "might have reached a different decision as to RFC if he had given [treating physician's] opinion greater weight after properly considering the Section 404.1527 factors . . . ."). Second, if the ALJ had developed additional medical evidence on the functional effects of Plaintiff's impairments that were unsupported by medical opinion, he might have made a different RFC determination. *See Hopkins on behalf of Garcia v. Berryhill*, 2018 WL 1122217, at *5 (N.D. Tex. Mar. 1, 2018) (finding that had the ALJ requested an additional medical assessment, the results of the RFC determination could have differed).

Accordingly, the Court **REMANDS** this case to the SSA for further proceedings consistent with this Order.

## IV.

## CONCLUSION

For the reasons explained above, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case to the SSA for further proceedings consistent with this Order.

**SO ORDERED.**

**SIGNED: August 31, 2020**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE